JOSEPH B. FREEMAN, JR., ET AL.

VERSUS

BLOCK "T" OPERATING, LLC, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2011-7167, DIVISION I
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and James T. Genovese, Judges.

AFFIRMED.

Saunders, J., dissents and assigns written reasons.

Raymond A. Beyt
Aaron D. Beyt
Beyt & Beyt
Post Office Box 52157
Lafayette, LA 70505
(337) 233-6771
COUNSEL FOR PLAINTIFFS/APPELLEES:
 Joseph B. Freeman, Jr.
 Mabel T. Freeman
 John T. Block
 Sally G. Block

**Karen Daniel Ancelet**
**Onebane Law Firm, APLC**
**Post Office Box 3507**
**Lafayette, LA   70502-3507**
**(337) 237-2660**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
     **Block "T"Operating, LLC**
     **Block "T" Petroleum, Inc.**

**AMY, Judge.**

The plaintiffs filed suit, seeking payment of overriding royalty interests they assert were owed on three subject oil wells. The defendants, the well operator and a partial working interest and net revenue interest owner, rejected the plaintiffs' demand, citing a defense under the public records doctrine. On cross motions for summary judgment, the trial court ruled in favor of the plaintiffs, finding the public records doctrine inapplicable in this case. Instead, it found that the plaintiffs' overriding royalty interests were created from a retained leasehold interest which was, in fact, commemorated in the public records. The defendants appeal. For the following reasons, we affirm.

### Factual and Procedural Background

The plaintiffs, Joseph B. Freeman, Jr., Mabel T. Freeman, John T. Block, and Sally G. Block, allege that Kurios Oil & Gas, LLC assigned overriding royalty interests in three oil wells to each of them by virtue of December 2008 assignments. The Assignments of Overriding Royalty Interests filed into the record indicate that Kurios Oil & Gas, LLC conveyed each couple "2.500% of 8/8ths" of the overriding royalty interests in two of the wells at issue (hereinafter referred to as the Thibodeaux No. 1 Well and the Domingue No. 1 Well) situated in Acadia Parish. Kurios additionally assigned each couple "2.456116% of 8/8ths" of the overriding royalty interests in an additional well (hereinafter referred to as the Victory Financial No. 1 Well) situated in Jefferson Davis Parish. While the assignments at issue were executed in December 2008, they were not recorded in the public records of their respective parishes at that time. The record establishes that Kurios began payment of the overriding royalty interests to the plaintiffs.

By a March 1, 2010 Assignment and Bill of Sale, Kurios conveyed to Block "T" Operating, LLC, a 20% working interest and a 14% net revenue interest in the

Thibodeaux No. 1 Well and a 20% working interest and a 14% net revenue interest in the Domingue No. 1 Well. Additionally, Kurios assigned to Block "T" Operating a 45.9294% working interest and a 31.623975% net revenue interest in the Victory Financial No. 1 Well. The assignments and bills of sale were recorded in their respective parishes on March 3, 2010. Various other parties also received working interests in the subject wells by those assignments.

Beginning in October 2010, Block "T" Operating assumed payment of the plaintiffs' overriding royalty interests. It distributed those payments until April 2011. In July 2011, the assignments of overriding royalty interests to the plaintiffs (and others) were recorded in the public records. Thereafter, the plaintiffs made demand on Block "T" Operating for the royalties pursuant to La.R.S. 31:212.21,[1] *et seq*. Block "T" Operating rejected the plaintiffs' demand, asserting that the public records did not evidence the plaintiffs' overriding royalty interests.[2]

---

[1] Entitled, "Nonpayment of production payment or royalties; notice prerequisite to judicial demand[,]" La.R.S. 31:212.21 provides:

> If the owner of a mineral production payment or a royalty owner other than a mineral lessor seeks relief for the failure of a mineral lessee to make timely or proper payment of royalties or the production payment, he must give his obligor written notice of such failure as a prerequisite to a judicial demand for damages.

[2] The record contains Block "T" Operating's correspondence in response, which indicates:

> Block T Operating is responsible for properly distributing oil and gas revenues from the properties in which your clients claim an interest.

> The real property records indicate no reservation, or conveyance of override royalties, until very recently, and only then from Kurios to your clients. Prior to the conveyances of these override royalties, Kurios had previously assigned working interests out to numerous individuals and entities without a reservation or conveyance of override royalties.

> As the real property records define the legal ownership of real property, including overriding royalties, Block T is liable for distribution in accordance with the recording statutes of the State of Louisiana.

> Block T has obtained legal counsel with experience in oil and gas law and recording statutes within Louisiana. It has been advised that it would face liability to the working interest owners by paying out on previously unrecorded

2

Thereafter, the plaintiffs filed this matter, naming Block "T" Operating and Block "T" Petroleum, Inc., the wells' operator, as defendants. In their petition, the plaintiffs rejected the defendants' defense under the public records doctrine. Instead, the plaintiffs set forth the attendant public records from the wells, noting that for both the wells in Acadia Parish and the well in Jefferson Davis Parish, the landowners' reserved a certain royalty. Thereafter, the assignments of working interests by Kurios to the various working interest parties, including Block "T" Operating, was based on only a portion of the overall net revenue interest. The plaintiffs asserted that addition of the landowners' reservation of royalties and that conveyed by the assignments of working interest participation demonstrated that Kurios retained a sufficient leasehold interest so as to have permitted it to convey the overriding royalty interests to the plaintiffs. This retention of the leasehold interest was apparent on the public records, the plaintiffs asserted, so as to defeat the defendants' contention that they did not have notice of the unrecorded overriding royalty assignments.

The defendants responded to the petition with an exception of nonjoinder of a party. They alleged that the overriding royalty interests claimed by the plaintiffs arise from the working interests of the wells' lessees. Block "T" Operating noted that it is only one such working interest owner and that any ruling would affect all of the working interest owners. It asserted that payment of an overriding royalty would decrease the working interest of each of the working interest owners, and, therefore, the plaintiffs' claimed relief could not be accorded without the inclusion

override royalty interests, unless it were to receive a release from the working interest owners. In accordance with this advice, Block T has sent out releases to the working interests owners. If it was the intent of the participation or other agreements to assign an override royalty interest to Kurios, (which was subsequently conveyed to your clients), and those working interest owners wish to release Block T Operating to release those override royalties, Block T will do so after receiving a release from those working interest owners.

of all of the owners. The plaintiffs opposed the exception, denying the existence of a dispute that would require the joinder of all working interest owners. Rather, the plaintiffs argued that the public records verified its contention that they were owed an overriding royalty interest, that the working interest owners' participations were similarly fixed in the public record, and that Block "T" Operating was the appropriate obligor for those royalties pursuant to La.R.S. 31:212.21, *et seq*. The trial court denied the exception of nonjoinder.

The plaintiffs and Block "T" Operating filed motions for summary judgment, advancing the above theories. Block "T" Petroleum also filed a motion for summary judgment asserting that it is not an obligor of the plaintiffs. Instead, Block "T" Petroleum contended that it is only the contract operator of the wells pursuant to a 2007 Operating Agreement entered into with the wells' working interest owners. Noting that the plaintiffs are not working interest owners, Block "T" Petroleum argued that it had no contractual relationship with the plaintiffs and did not have any other legal obligation to the plaintiffs as alleged.

Following a hearing on the three motions for summary judgment, the trial court granted summary judgment in favor of the plaintiffs and against Block "T" Operating. The trial court denied the motions of the defendants.[3] It further made

---

[3] Judgment was rendered, in part, as follows:

[T]here is judgment in favor of plaintiffs, JOSEPH B. FREEMEN, JR., MABEL T. FREEMAN, JOHN T. BLOCK and SALLY G. BLOCK, and against defendant, BLOCK "T" OPERATING, LLC, for all unpaid sums accruing to their overriding royalty interests from production of oil and gas from those oil and/or gas wells known as Thibodeaux No. 1 Well and the Domingue No. 1 Well, situated in the South Bayou Mallet Field, Acadia Parish, Louisiana, equal to 2.5% of 8/8ths to plaintiffs, JOSEPH B. FREEMAN, JR. and MABEL T. FREEMAN, and 2.5% of 8/8ths to plaintiffs, JOHN T. BLOCK and SALLY G. BLOCK, and, the Victory Financial No. 1 Well, situated in the Welsh Field, Jefferson Davis Parish, Louisiana, equal to 2.456116% of 8/8ths to plaintiffs, JOSEPH B. FREEMAN, JR. and MABEL T. FREEMAN, and 2.456116% of 8/8ths to plaintiffs, JOHN T. BLOCK and SALLY G. BLOCK, together with legal interest thereon from date due until paid.

the judgment a final judgment for purposes of appeal under La.Code Civ.P. art. 1915.

Block "T" Operating and Block "T" Petroleum appeal and present the following issues for review in their brief to this court:

> Whether under the Louisiana Public Records Doctrine, the Assignment of Overriding Royalty Interest held by Plaintiffs burdens the interest held by Block "T" Operating LLC in the leases and wells at issue.

> Whether Block "T" Operating LLC, as owners of only a partial working interest in the wells and leases at issue, can be held to Plaintiffs for the entirety of any overriding royalties due from the wells at issue.

> Whether the Judgment is an absolute nullity because the Judgment sought by the Plaintiffs and entered by the District Court burdens the real rights of persons not made parties to the lawsuit by Plaintiffs.

> Whether Block "T" Petroleum, Inc. who is only a contract operator of the wells at issue and does not own any interest in the leases or wells at issue, owes any obligation to Plaintiffs for payment of overriding royalties.

**Discussion**

*Louisiana Code of Civil Procedure Article 966*

Largely, this appeal addresses the trial court's rulings on three motions for summary judgment. Accordingly, we begin our consideration of those matters in reference to La.Code Civ.P. art. 966(B)(2), which provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law." As for the burden of proof on the motion, Article 966(C)(2) indicates that:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is

before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

On appeal, an appellate court reviews a summary judgment de novo using the same criteria that governed the trial court's consideration of whether summary judgment is appropriate. *Louisiana Safety Ass'n of Timbermen-Self Insurers Fund v. Louisiana Ins. Guar. Ass'n*, 09-0023 (La. 6/26/09), 17 So.3d 350.

*Public Records Doctrine*

The defendants' argument in opposition to the plaintiffs' motion for summary judgment and in support of the Block "T" Operating motion for summary judgment rests upon the public records doctrine. In this regard, Louisiana Civil Code Article 3338 provides:

> The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
>
> (1) An instrument that transfers an immovable or establishes a real right in or over an immovable.
>
> (2) The lease of an immovable.
>
> (3) An option or right of first refusal, or a contract to buy, sell, or lease an immovable or to establish a real right in or over an immovable.
>
> (4) An instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments described in Subparagraphs (1) through (3) of this Article.

In *Cimarex Energy Co. v. Mauboules*, 09-1170, pp. 19-20 (La. 4/9/10), 40 So.3d 931, 944, the Louisiana Supreme Court noted that La.Civ.Code art. 3338

6

now generally sets forth the public records doctrine, and explained that the "doctrine has been described as a negative doctrine because it does not create rights, but, rather, denies the effect of certain rights unless they are recorded." It further stated that:

> In explaining the negative nature of the doctrine, this Court has stated that third persons are not allowed to rely on what is contained in the public records, but can rely on the absence from the public records of those interests that are required to be recorded. The primary focus of the public records doctrine is the protection of third persons against unrecorded interests.

*Id.* (Citations omitted.)

In support of their argument, the defendants point out that the assignments of overriding royalty interests were confected between Kurios and the plaintiffs. The resulting assignments were not recorded in the public records until after Kurios transferred certain working interests and net revenue interests to various parties. Thus, the defendants contend, La.Civ.Code art. 3338 indicates that the overriding royalty interests are without effect to them, insofar as they are third parties. However, this argument wrongfully places the focus of this case on Block "T" Operating's role as an interest owner in the wells at issue.

Review of the plaintiffs' petition, their submission in support of their motion for summary judgment, and the hearing transcript reveals that this case is one directed to Block "T" Operating in its role as the party who distributes the revenues from wells. Block "T" Operating's role as one of the working interest and net revenue interest owners is largely relevant to its own motion for summary judgment, discussed below.

With regard to their motion for summary judgment, the plaintiffs submitted the various assignments at issue in this case, including the assignments of overriding royalty interests, the assignments of oil, gas and mineral leases to

various leaseholders, and assignments and bills of sale executed between Kurios and Block "T" Operating. It is unquestioned that the assignment of overriding royalty interests were not recorded in the public records until after Block "T" Operating acquired its ownership interest. However, the recorded documents indicate that the net revenue interest owners received only a portion of the leasehold interest of each well. The retained leasehold, the assignments demonstrate, was sufficient so as to create the overriding royalty interest in the percentages claimed by the plaintiffs. The trial court recognized the retention of a sufficient leasehold by the plaintiffs so as to create the overriding royalty interests, and we do not find error in that recognition in light of the percentages assigned to the working interest owners.

The plaintiffs' submission further indicates, through the affidavit of Mr. Freeman and Mr. Block, that Kurios paid all royalties accrued until September 2010. Block "T" Operating began doing so thereafter. After demand and in correspondence, Block "T" Operating responded that it "is responsible for properly distributing oil and gas revenues from the properties in which your clients claim an interest." Further, at the hearing on the motions for summary judgment, counsel for the defendants explained that Block "T" Petroleum is the operator of the wells and that Block "T" Operating is "the one paying." Thus, the trial court did not err in finding that Block "T" Operating is the appropriate party to be cast in judgment for payment of the overriding royalty interests.

Finally, we find no merit in Block "T" Operating's argument that the trial court erred in denying its own motion for summary judgment. As stated above, Block "T" Operating's argument is premised on the application of the public records doctrine and focuses on the recording date of the overriding royalty interests. However, as recognized by the trial court, the percentage of interests

8

received by Block "T" Operating, in its capacity as an owner of the working interest and net revenue interest, is fixed by the various assignments at issue. Despite its assertion, there is no indication that payment of the plaintiffs' overriding royalty interest affects the percentage of net revenue interest ultimately received by Block "T" Operating which is, in fact, commemorated by the public records.

Accordingly, we find no merit in the defendants' contention that the trial court erred in granting the motion for summary judgment filed by the plaintiffs and in denying that filed by Block "T" Operating.

*Exception of Nonjoinder of a Party*

Block "T" Operating also questions the trial court's denial of its exception of nonjoinder of a party. In its motion, Block "T" Operating observed that it is only one of multiple working interest owners in the wells and attendant leases. As the overriding royalty claim burdens all of the working interest claims, Block "T" Operating claims, all working interest owners must be made party to the suit.

Louisiana Code of Civil Procedure Article 641 provides that:

> A person shall be joined as a party in the action when either:
>
> (1)     In his absence complete relief cannot be accorded among those already parties.
>
> (2)     He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
>
> (a)     As a practical matter, impair or impede his ability to protect that interest.
>
> (b)     Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

In the event an adjudication is made without making a person described in La.Code Civ.P. art. 641 a party, the judgment is an absolute nullity. *Avoyelles Parish Sch.*

*Bd. v. Bordelon*, 11-126 (La.App. 3 Cir. 10/5/11), 77 So.3d 985 (quoting *Stephenson v. Nations Credit Fin. Servs. Corp.*, 98-1688 (La.App. 1 Cir. 9/24/99), 754 So.2d 1011).

On review, we do not disturb the trial court's denial of the exception of nonjoinder. We first point out that the plaintiffs' suit was not directed to Block "T" Operating in its capacity as a working interest owner, although it held this status as well. Rather, the action, and resulting judgment, was directed to Block "T" Operating as the party responsible for properly distributing the revenues from the well, as discussed above. Furthermore, we note that the judgment denying the exception of nonjoinder of parties provided leave to the defendants "to join all parties as third party defendants whom defendants reasonably believe may have an interest in the subject matter of this litigation." The record contains no such action by the defendants.

This argument lacks merit.

*Block "T" Petroleum, Inc.*

Finally, Block "T" Petroleum contests the trial court's denial of its motion for summary judgment. It further notes that, in reasons for ruling, the trial court stated that "Block "T" Petroleum has an obligation, as the contract operator, to account for and pay for production from the well to the rightful owners." Block "T" Petroleum objects to such a determination, pointing out that any duties it owes are to the working interest owners. Insofar as the plaintiffs are not working interest owners and allege only that they are overriding royalty interest owners, Block "T" Petroleum argues, it has no legal or contractual obligations to the plaintiffs. Thus, Block "T" Petroleum asserts that the trial court erred in failing to grant its motion for summary judgment.

10

In discussion of this aspect of the defendants' appeal, we first point out that a trial court's reasons for ruling form no part of the judgment and are not reviewed by an appellate court. *Wooley v. Lucksinger*, 09-0571 (La. 4/1/11), 61 So.3d 507. Instead, appeals are taken from a judgment only. *Id.*

Additionally, consideration of the complained of statement within a larger context is helpful for discussion purposes. First, the trial court's *judgment* did not impose duties or obligations on Block "T" Petroleum. Rather, and although the judgment denied the defendant's motion for summary judgment, the judgment entered ordered only Block "T" Operating to take any action. Second, the context of the complained of statement in the reasons for ruling confirms that the focus of the trial court's ruling was only Block "T" Operating. The trial court stated, in part:

> Block T Operating is the responsible party to properly distribute the oil and gas revenues from the wells at issue. (Block T Petroleum has an obligation, as the contract operator, to account for and pay for production from the well to the rightful owners.) By virtue of the assignment between Kurios Oil & Gas, LLC to Block T Operating of a 20% working interest and 14% net revenue interest, Kurios thereby reserved a leasehold interest sufficient to create the overriding royalty interest to the plaintiffs. Thus, on the face of the public records, Block T Operating is vested with a 14% net revenue interest. The subsequent recorded assignment to plaintiffs do not have any [e]ffect on the participation of Block T Operating in production. Block T Operating still pays its joint interest billing based upon 20% working interest and receives a 14% net revenue interest. Royalty interests subsequently assigned by Kurios Oil & Gas have no [e]ffect on the participation in production of Block T Operating. Block T Operating cannot create greater rights than those created by the assignment from Kurios.
>
> Thus, plaintiffs are entitled to all overriding royalties due to them through the current date, together with legal interest thereon, as required by law. The remaining issue regarding the bad faith of defendants in denying payment of such funds will be reserved for a later date.

While the trial court references Block "T" Petroleum within the parenthetical comment, it included no similar determination within the judgment. Again, it is

11

the judgment that is on appeal and reviewed, not the reasons for reasons for ruling. *See Wooley*, 61 So.3d 507.

Finally, and with regard to Block "T" Petroleum's contention that the trial court erred in denying its motion for summary judgment, we find no merit in this claim. Certainly, Block "T" Petroleum's submission in support of its motion indicates that it is the contract operator of the well. Also, the president of Block "T" Petroleum states in his affidavit that the corporation owns no interest in the leases covering the wells. However, beyond those statements and the excerpt from an operating agreement entered into evidence, the relationship between Block "T" Petroleum and Block "T" Operating is ill-defined in the record. Accordingly, we find the trial court acted appropriately in rejecting Block "T" Petroleum's motion for summary judgment.

This argument lacks merit.

### DECREE

For the foregoing reasons, the judgment entered by the trial court is affirmed. All costs of this proceeding are assessed to the appellants, Block "T" Operating, LLC and Block "T" Petroleum, Inc.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

13-58

JOSEPH B. FREEMAN, JR., ET AL.

VERSUS

BLOCK "T" OPERATING, ET AL.

**Saunders, J., dissents and assigns written reasons**

In my view, the pivotal issue before us is whether plaintiffs overriding royalty interests burdened Block "T" Operating's interests. Plaintiffs point to no evidence in the record that proves that their interests are mutually exclusive from those of Block "T" Operating.

Clearly, an issue of fact exists as to the effect of paying plaintiffs' overriding royalty interests. Whether plaintiffs' overriding royalty interests burden Block "T" Operating's or any working interest holder's interest is determinate of whether the public records doctrine is applicable. If plaintiffs' interests have no effect on Block "T" Operating's interests, then who recorded their real right first is irrelevant. Conversely, if plaintiffs' overriding royalty interests affect Block "T" Operating's interests, then who recorded their real right first is dispositive between them.

As such, I would find that a material fact exists on this issue and reverse the trial court's grant of plaintiffs' motion for summary judgment. Further, I would order that all entities having a working interest in the wells be joined in the litigation.